```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JEREMY D. VALERIO, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | CIVIL NO. 04-5098 (JBS) |
| v. | |
| UNITED STATES of AMERICA, | **OPINION** |
| Respondent. | |

APPEARANCES:

Mr. Jeremy D. Valerio
#40648-050
USP Allenwood
P.O. Box 3000
White Deer, PA 17887
    Petitioner pro se

Christopher J. Christie
United States Attorney
    By:  R. Stephen Stigall
         Assistant U.S. Attorney
Camden Federal Building & U.S. Courthouse
401 Market Street, 4th Floor
Camden, NJ 08101
    Attorney for Respondent

**SIMANDLE**, District Judge:

   Petitioner Jeremy Valerio brings this pro se civil action for habeas corpus relief under 28 U.S.C. § 2255.  Pursuant to a plea agreement, Petitioner plead guilty to a two count Indictment, which charged him with (1) knowingly receiving and possessing a firearm (i.e. a bomb) and (2) knowingly and wilfully using, carrying and discharging a firearm (i.e. a bomb).  On October 15, 2003, this Court sentenced Petitioner to 151 months

imprisonment on Count One and a consecutive 120 month term of imprisonment on Count Two, for a total aggregate sentence of 271 months imprisonment.

In his petition, Mr. Valerio raises two claims under which he argues his sentence should be set aside or vacated pursuant to 28 U.S.C. § 2255.  First, Petitioner argues that he received ineffective assistance of counsel.  Second, Petitioner contends that under Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), his sentence pursuant to the United States Sentencing Guidelines violated the Sixth Amendment.  For the reasons discussed below, Petitioner's habeas corpus application will be denied.

## I. BACKGROUND

In April 2002, Petitioner Jeremy Valerio, along with co-conspirators Victoria Moore, Kevin Frymyer and Karl Webb, conspired to blow up a car and a house using explosive bombs in retaliation for a drug deal gone awry.  The conspiracy began when Ms. Moore came into possession of the controlled substance Ecstasy following a drug deal.  (Govt. Ex. 1 at ¶¶ 17, 24.)  On April 14, 2002, H.W., A.H. and another male arrived at Mr. Frymyer's residence wishing to speak with Ms. Moore about money she owed them from the Ecstasy deal.  (Id. at ¶ 17.)  Mr. Frymyer engaged in a heated argument with H.W., A.H. and the other

unidentified male while Ms. Moore hid in Mr. Frymyer's residence. (Id.)

Following the incident, Mr. Frymyer, Ms. Moore, Mr. Valerio and others drove to the residence of Mr. Frymyer's mother-in-law. (Id. at ¶ 18.)  There, Mr. Frymyer learned that H.W. had threatened Mr. Frymyer's mother-in-law and demanded that she repay Ms. Moore's debt.  (Id.)  Mr. Frymyer became enraged, stating that he was "going to kill H.W.," and subsequently attempted to purchase a firearm.  (Id.)

When the firearm became unavailable, Mr. Valerio suggested the group obtain a bomb.  (Id.)  Mr. Valerio, Mr. Frymyer and others drove to Karl Webb's residence to purchase the bomb.  (Id. at ¶ 19.)  After purchasing the device, Ms. Moore drove Mr. Frymyer and Mr. Valerio to M.N.'s residence.  (Id. at ¶ 26.)  Mr. Frymyer and Mr. Valerio got out of the car and attempted to bomb a white Grand Prix owned by M.N.  (Id.)  The device failed to detonate so Mr. Valerio bought another device from Mr. Webb. (Id. at ¶¶ 26, 27.)

Later that same day, Ms. Moore and Mr. Valerio returned to H.W.'s residence in Franklinville, New Jersey.  (Id. at ¶¶ 16, 28.)  After surveying the area, Mr. Valerio threw the device purchased from Mr. Webb through the window of H.W.'s residence. (Id. at ¶ 28.)  The device exploded and the ensuing fire caused extensive damage to the interior of the residence.  (Id. at 16.)

H.W. and A.H., pregnant at the time, were inside the residence and were both injured while trying to escape from the fire. (Id.)

On December 10, 2002, a Grand Jury returned a three-count Indictment against Petitioner. (Def. Br. at 6.) Subsequently, Mr. Valerio entered a plea agreement with the United States and, based on the negotiations, the United States agreed to dismiss Count Three of the Indictment. (Id. at 9.) On June 26, 2003, Petitioner plead guilty to Counts One and Two of the Indictment. (Id.) Petitioner was sentenced by this Court on October 15, 2003 to 151 months imprisonment on Count One and a consecutive 120 month term of imprisonment on Count Two for a total aggregate sentence of 271 months. (Id.) Petitioner filed the instant pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 on October 18, 2004. Respondent, the United States of America, answered on July 5, 2005. In an August 3, 2005 order, this Court enlarged Petitioner's time to respond to Respondent's Answer until October 12, 2005. Petitioner failed to reply to Respondent's Answer by this date.

## II. DISUSSION

A. Jurisdiction

Title 28 U.S.C. § 2255 permits a prisoner in custody under a sentence of a federal court to move the court which imposed the sentence to vacate, set aside, or correct the sentence. 28

4

U.S.C. § 2255; <u>Hill v. United States</u>, 368 U.S. 424, 426 (1962). The prisoner may assert the right to be released upon several grounds, including that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255.

B. <u>Ineffective Assistance of Counsel Claim</u>

Petitioner argues that, under 28 U.S.C. § 2255, he is entitled to relief because he was denied effective assistance of counsel during the plea agreement and sentencing proceeding. (Pet'r Motion at 5.) Generally, to prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient and (2) this deficiency prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). In meeting the first requirement, the petitioner must show that counsel's representation fell below an "objective standard of reasonableness" and outside the range of competent assistance demanded of professional criminal defense attorneys. <u>Id.</u> at 688; <u>see also</u> <u>United States v. Headley</u>, 923 F.2d 1079, 1083 (3d Cir. 1991). An evaluation of the attorney's performance must be from the attorney's perspective at the time of the alleged error, and should indulge a strong presumption that counsel's performance is within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689. Because of the variety of legitimate strategies by which an attorney can

5

defend a client, the defendant must overcome the assumption that the challenged action "might be considered sound trial strategy" under the circumstances. Id.

As per the second requirement, in order to prove prejudice the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. Unless the petitioner makes both showings, the applicant's sentence cannot be said to have resulted from a breakdown in the adversary process. Id. at 687.

The Strickland two-part standard applies to ineffective assistance of counsel claims arising out of the guilty plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). In the context of guilty pleas, the first requirement of Strickland remains "nothing more than a restatement of the standard of attorney competence." Id. at 58. The prejudice requirement "on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59. Therefore, in order to satisfy this requirement, the petitioner must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

Here, Petitioner asserts in his motion, for the first time, that his lawyer told him that if Petitioner plead guilty to 30

6

years of imprisonment, the United States would recommend a sentence of 15 years at the time of his sentencing.  (Pet. Addendum.)  Petitioner supports his claim with a declaration dated September 26, 2004 signed by Alex Valerio, Petitioner's biological father, which avers that Petitioner's lawyer told him of this alleged oral deal with the United States.  (Id.)

However, the entire plea colloquy undermines Mr. Valerio's present claim of ineffective assistance of counsel during the plea agreement.  On June 26, 2003, this Court conducted an extensive plea colloquy with Petitioner, at which time he acknowledged under oath that he fully understood the plea agreement, and voluntarily agreed to the terms.  (Govt. Ex. 6.) Specifically, the following colloquy occurred:

> THE COURT:     Now, have you read the indictment that contains the charges against you?
>
> DEFENDANT:     Yes.
>
> THE COURT:     And do you understand the charges against you?
>
> DEFENDANT:     Yes.
>
> THE COURT:     Have you gone over those charges with your attorney?
>
> DEFENDANT:     Yes.
>
>                . . .
>
> THE COURT:     Now have you had any difficulties communicating with your attorney?
>
> DEFENDANT:     No.

7

THE COURT:        Are you satisfied with the services and the efforts of your attorney?

DEFENDANT:        Yes.

THE COURT:        Is this decision to plead guilty to Counts 1 and 2, your own personal decision?

DEFENDANT:        Yes.

THE COURT:        Is anyone forcing you to plead guilty?

DEFENDANT:        No.

             . . .

THE COURT:        Now, have you read your plea agreement in the case?

DEFENDANT:        Yes.

THE COURT:        And do you have a copy of the May 29th letter in front of you?

DEFENDANT:        Yes.

THE COURT:        Has anyone said anything to you orally about pleading guilty or about what your sentence will be, that's in any way different from what's in this written plea agreement?

DEFENDANT:        No.

THE COURT:        If so, tell me now, because you can't come back otherwise at the time of sentencing and say something different.  So, is there anything different?

DEFENDANT:        No.

             . . .

THE COURT:        Has anyone promised you what your sentence will actually be?

DEFENDANT:        No.

8

```
THE COURT:      Do you understand that even though you're
                pleading guilty, that there is no agreement
                as to what your sentence will be?

DEFENDANT:      Right, yes.
```

(Id. at 10:11-19; 11:14-24; 12:6-23; 13:16-22.)  There is, to say the least, a formidable barrier against setting aside a guilty plea where a defendant's solemn declarations in open court demonstrated the lawfulness of the plea.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Such declarations carry "a strong presumption of verity."  Id. at 74.  Here, the entire plea colloquy undermines Mr. Valerio's present claim of ineffective assistance of counsel due to counsel's alleged misrepresentation of Petitioner's prison term during the plea agreement.  Mr. Valerio's petition offers no reason to reexamine his own words and understandings upon the record of his case.

Petitioner also argues that he did not receive effective assistance of counsel during sentencing because counsel allegedly advised the Court to impose a more severe sentence on him.  (Pet. Addendum.)  As support, Petitioner claims that his counsel purportedly advised the Court that Mr. Valerio failed to show any remorse for the crime.  (Id.)  Therefore, counsel allegedly recommended that the Court impose a severe sentence on Petitioner and requested that Mr. Valerio be placed in a penitentiary, presumably based on counsel's statements to the Court that Petitioner received structure in his life while in prison.  (Id.)

9

However, counsel's statements during the sentencing prove otherwise.  During Petitioner's sentencing on October 15, 2003, counsel requested that the Court impose a sentence at the bottom end of the guideline range.  (Govt. Ex. 7 at 5:17-20.)  Therefore, Petitioner's claim is without merit.  In addition, counsel never asked the Court to place Mr. Valerio in a penitentiary.  To the contrary, counsel specifically recommended to the Court that Petitioner be placed at FCI:

>    MR. GREENBERG:  I would ask your Honor . . . [to] consider recommending Fairton Correctional Institute so he can have visits from his family.
>
>    THE COURT:     I will recommend Fairton.

(Id. at 7:3-7.)  Moreover, Petitioner misinterprets counsel's statement requesting a structured environment for his place of incarceration.  In response to the Court's question of how Petitioner had reached such a stage in his life, counsel suggested that the lack of structure in Petitioner's life was a contributing factor into why he committed the crimes to which he plead guilty.  (Id. at 7:18-25.)  Such an argument by counsel states a commonly understood and reasonable argument for leniency, or for a second chance for a client who did not have any advantages in life.  Here, Counsel's statement falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689.

Lastly, Petitioner fails to establish that he was prejudiced by the representation of his counsel.  Here, Petitioner explicitly admitted his own guilt and failed to assert in his petition that but for counsel's actions he would have insisted on going to trial.  Additionally, this Court used particular care during the plea colloquy and sentencing to ensure that Petitioner understood the terms of the plea agreement and that he in fact received a sentence at the bottom of the guideline range.  Since Petitioner failed to meet both requirements under Strickland, Petitioner's claim of ineffective assistance of counsel has no merit and both the plea agreement and sentencing did not result from a breakdown in the adversary process.

C.   Substantive Claim under Blakely and Booker

Petitioner also attempts to raise a claim under Blakely and Booker.  Since Petitioner is arguing that his sentence under the United States Sentencing Guidelines violated the Sixth Amendment, his claim is really a claim under Booker, which announced the new rule.  Petitioner's conviction became final on October 15, 2003. However, the United States Supreme Court did not render its decision in Booker until January 12, 2005.

In Lloyd v. United States, 407 F.3d 608, 612-613 (3d Cir. 2005), the Third Circuit Court of Appeals held that Booker announced "a new rule of criminal procedure for purposes" of Teague v. Lane, 489 U.S. 288 (1989).  Under Teague, "a new rule

of criminal procedure 'will not be applicable to those cases which have become final before the new [rule is] announced.'" 407 F.3d at 611 (quoting Teague, 489 U.S. at 310).  The Third Circuit also ruled that because Blakely "reserved decision about the status of the Federal Sentencing Guidelines, and Booker established a new rule for the federal system," "[i]t is the date on which Booker issued, rather than the date on which Blakely issued, that is the 'appropriate dividing line.'"  Lloyd, 407 F.3d at 611-612 n.1 (quoting McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005)).

The Third Circuit also concluded that the rule announced in Booker does not fall within Teague's narrow exception for "'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" Lloyd, 407 F.3d at 613 (internal citation omitted).  The Third Circuit emphasized:

> [I]n the opinion authored by Justice Breyer, the unconstitutionality of the Guidelines was remedied by excising the provision, at 18 U.S.C. § 3553(b)(1), that made their application mandatory.  See Booker, 543 U.S. at ___, 125 S. Ct. at 756-757.  By creating an advisory federal sentencing regime, the Booker Court did not announce a new rule of criminal procedure that significantly increases the "certitude" or "accuracy" of the sentencing process . . . because defendants' sentences "would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system."

12

Lloyd, 407 F.3d at 615 (internal citations omitted) (quoting McReynolds, 397 F.3d at 481).

The Third Circuit thus concluded that "[b]ecause Booker announced a rule that is 'new' and 'procedural,' but not 'watershed,' Booker does not apply retroactively to initial motions under § 2255 where the judgement was final as of January 12, 2005, the date Booker issued."  Lloyd, 407 F.3d at 615-616.  Based on this, Petitioner's Booker claim must be dismissed because his sentence became final on October 15, 2003.

### III. CONCLUSION

For the reasons stated above, Petitioner's 28 U.S.C. § 2255 habeas corpus application will be denied.  The accompanying Order is entered.


**November 9, 2005**                          **s/ Jerome B. Simandle**
DATE                                          JEROME B. SIMANDLE
                                              United States District Judge

13